Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3159 | **DATE** | 2/19/2002 |
| **CASE TITLE** | Eager vs. Commonwealth Edison, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum Opinion and Order granting in part and denying in part defendants' motion to dismiss or in the alternative to strike (6-1,6-2,7-1 & 7-2). Status hearing set for 3/8/02 at 10:15 a.m. at which time the court will set discovery schedules. Parties shall submit their proposed scheduling order prior to the status conference. Parties are further advised that any extension of discovery will not change the deadline for the filing of a dispositive motion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | 2/20/02 date docketed | 30 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | AWK docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | 2/19/2002 date mailed notice | |
| MPJ | courtroom deputy's initials | 02 FEB 19 PM 4:43 | MPJ mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DOCKETED
FEB 2 0 2002

KRISTEN EAGER, )
)
Plaintiff, )
)
v. ) No. 01 C 3159
)
)
COMMONWEALTH EDISON COMPANY, a )
domestic and foreign )
corporation, and its parent )
EXELON CORPORATION, a foreign )
corporation, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Karen Eager was hired by Commonwealth Edison and its parent Excelon (collectively "ComEd") as a meter reader in 1990, but since September 1991, she worked as an electrical lineman in ComEd's Overhead Department at its University Park facility in Kankakee, Illinois. Her job involved climbing poles and doing overhead electric work. She was one of two women among the non-supervisory employees at the University Park facility. She says that she was subject to sexual harassment and retaliation from 1993 to 1999, when she took a disability leave of absence because she was electrocuted when she was compelled to work while exhausted, and then sexually harassed and retaliated against her since she returned this year. She sues under Title VII and several state common law causes of action. ComEd moves to dismiss. I deny the

motion in part and grant it in part.

I.

According to Eager's complaint, which I must credit for the purpose of this motion, she has not been treated well by her male co-workers or the management at ComEd. In 1992-95, co-workers told her that women should not be performing overhead or electrical work; that the men would "break" her, and made statements and jokes about the size of her nipples. In 1993, coworkers showed her pornographic pictures, asked her if she would warm her hands on their private parts, and told her she should be performing in the manner depicted in *Playboy*. In 1998, a coworker ripped a pad from a chair and told Eager to stick it in her pants. In July 1998, she testified in a sexual harassment investigation involving another woman, stating that she had seen pornography in ComEd trucks; that she was assigned by a supervisor to vacuum, and was told, "This is what [you] are supposed to be doing for a living"; and that her supervisor remarked on her breasts. As a result of the response to this investigation, ComEd told her that they were "sorry for opening another can of worms." In late 1998, various male employees told Eager to bend over so that they could see down her shirt; one stated that his chest was bigger than hers; and, despite Eager's requests to stop, they joked about visiting "titty bars" after work. Between January and June 1999, co-workers asked Eager if she "cuddled after sex," remarked about her body parts, and said they

wanted to her have their baby. Between January and June 1999, in retaliation for her complaints, male co-workers began to call Eager names, such as "bitch," and "stuck-up bitch." Eager again complained to management, who told her that they would set up a meeting to address the problem. Male coworkers began taunting her, telling her that she was "starting trouble," and one stated that he would "pimp-slap" her. In October 2000, some of her male co-workers said falsely that she did not do her work and that men had to do her work. On October 10, 2000, Eager filed an EEOC charge alleging sexual harassment and discrimination.

Meanwhile, on June 11, 1999, Eager was electrocuted and burned while working on an overhead power line, after ComEd compelled her to work for 23½ hours the previous day. She was seriously injured. Her right index finger had to be amputated; she had to undergo skin grafts and other recovery, and she suffers from permanent physical and emotional injuries, including post-traumatic stress disorder ("PTSD"). From June 1999 through early March 2001, Eager was placed on a disability leave of absence. She returned to full employment in March 2001.

On about March 20, 2001, Eager was assigned to a truck that contained pornographic materials, which exacerbated her PTSD. She complained to management and had to leave work ill. Management told the male employees that they should not have "inappropriate" materials, but the workers laughed, joked, and dared management to

define "inappropriate." Management took no further action. On about March 30, Eager's male coworkers said at work and in her presence that women were "bitches," "pussies," "played games by not giving up pussy," were "fucking bitches," and would "cut your dick off." Eager became ill, required medical treatment, and again had to leave work early. She reported the harassment and illness to management, and asked that she not be identified as the complaining party. But shortly after Eager returned to work in April 2001, and through the filing of this lawsuit, her male coworkers have taunted her that she "turned them in" to management and that they cannot have "potty mouth" in her presence. Eager again reported the incidents that had happened since March 2001, but ComEd told her that the commentary was not directed at her; the men were discussing a cable TV program on prostitution.

On May 4, 2001, Eager filed a second EEOC charge, and received a right to sue letter on July 19, 2001. Eager filed this lawsuit on May 1, 2001, and her second amended complaint in August 2001. She sues under Title VII for sexual harassment (count I) and retaliation (count II), as well as under state law counts of assault and battery (count III), assault (count IV), and intentional (count V) and negligent (count VIII) infliction of emotional distress. (I follow Eager's numbering; there are no counts VI and VII).

II.

On a motion to dismiss, I accept all well-pleaded factual allegations of the plaintiff and draw all reasonable inferences in her favor. *Colfax Corp. v. Illinois State Toll Hwy. Auth.*, 79 F.3d 631, 632 (7th Cir. 1996). Dismissal is only appropriate if it appears beyond doubt that she can prove no set of facts that would entitle her to relief. *Id.* ComEd argues that Eager's Title VII claims should be dismissed for procedural reasons because her claims based on events occurring before December 15th, 1999, 300 days before the filing of her first EEOC charge on October 10, 2000, are untimely, and therefore that I should not exercise jurisdiction over her state law claims.

In response, Eager invokes the continuing violations doctrine, under which conduct that falls outside the limitations period is actionable if it is linked with related acts that fall within the period. *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). The doctrine is applicable when the conduct can be recognized as actionable only in the light of later events that occurred within the limitations period, *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 396 (7th Cir. 1999), because the plaintiff had no reason to believe that she had been subject to actionable conduct when the events outside the limitations period occurred. *Selan*, 969 F.2d at 565-66. For the doctrine to apply, a plaintiff must allege some act occurring within the limitations period. *Young v. Will County*

*Dep't. of Public Aid*, 882 F.2d 290, 292 (7th Cir. 1989). ComEd says that Eager was not even at the workplace from June 11, 1999, through March 2001, and so no such act is alleged. This is not in fact clear from the face of the complaint, but Eager does not dispute it. However, the argument presupposes that the events occurring after March 5, 2001 cannot be considered. ComEd says that Eager failed to allege that she received a right-to-sue letter on charges based on those events. This defect, however, has been corrected in the second amended complaint.

By itself that emendation would not be enough if the contested events could have been recognized as actionable when they occurred. *Galloway v. G.M. Serv. Parts Operations*, 78 F.3d 1164, 1167 (7th Cir. 1996) ("The plaintiff may not base her . . . suit on conduct that occurred outside the . . . limitations [period] unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in the light of events that occurred later, within th[at] period."). But if the conduct could be recognized as a violation, it would not be reasonable for the plaintiff to sue.

The question is, how bad were the events before December 15, 1999? As I have explained in connection with the continuing violations doctrine:

> The logic of the .. . doctrine reverses the normal stances of the parties. A defendant who wishes to argue that the events

> it wants excluded fall outside the limitations period has to
> argue that, if the facts were as the plaintiff said, they
> would have constituted actionable harassment, and that the
> plaintiff unreasonably failed to complain when her cause of
> action accrued. Meanwhile a plaintiff who wants to bring in
> events . . . has to argue that they did not constitute
> actionable harassment, and could only later be recognized as
> forming a pattern of illegal conduct. In short, the defendant
> must say: "We were really awful, but it's too late"; while the
> plaintiff must say: "Oh, they weren't that bad--until less
> than 300 days before I filed." The law does put the defendant
> opposing the application of the . . . doctrine in a delicate
> position, but that is because the alternative is to put the
> plaintiff invoking the doctrine in an impossible position.

*Bowers v. Radiological Soc. of N. Am., Inc.*, 98 F. Supp. 2d 951, 955-56 (N.D. Ill. 2000). However, "if the earlier acts were the serious ones and the later acts were not essential to make it apparent to the victim that she had a claim for sexual harassment, she can still sue within 300 days of the last act, but she cannot reach back and impose liability for the earlier acts." *Minor v. Ivy Tech State College*, 174 F.3d 855, 857 (7th Cir. 1999).

Sexual harassment is "the form of sex discrimination in the terms or conditions of employment that consists of efforts either by coworkers or supervisors to make the workplace intolerable or at least severely and discriminatorily uncongenial to women ("hostile work environment" harassment), and also efforts (normally by supervisors) to extract sexual favors by threats or promises ("quid pro quo" harassment). *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998). This a hostile working environment case. To be actionable under this theory, a plaintiff must show the harassment to be "sufficiently severe or pervasive to alter the conditions of

employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). The standard for such harassment in this circuit is fairly hard to meet. Under the hostile environment theory, "[t]he concept of sexual harassment is designed to protect working women from the kind of male attentions that can make the workplace hellish for women. . . . It is not designed to purge the workplace of vulgarity." *Baskerville v. Culligan Int'l. Co.*, 50 F.3d 428, 430 (7th Cir. 1995). There, the appeals court held that the following conduct, over a period of seven months, amounted to mere "occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers," *id.*, and was not actionable harassment: calling the plaintiff "pretty girl"; grunting when she wore a leather skirt; suggesting she heated up his office, telling her that a P.A. system "attention" announcement meant that "All pretty girls run around naked"; implying that "pretty girls" at the office party might make him "lose control"; insinuating that she and he had been "dancing, like in a nightclub"; and mentioning that it was lonely in his hotel and stating, with a gesture suggesting masturbation, that all he had for company was his pillow. *Id.* In other cases, the appeals court, applying the "severe and pervasive" standard, held that it was not sexual harassment for a defendant to ask the plaintiff for dates on repeated occasions, place signs which read "I love you" in her work area, and attempt twice to kiss her, *Weiss v. Coca-Cola Bottling*

-8-

*Co. of Chicago*, 990 F.2d 333, 337 (7th Cir. 1993) (incidents were too isolated and insufficiently severe); *accord Saxton v. ATT Co.*, 10 F.3d 526 (7th Cir. 1993) (not actionable when the defendant had on one occasion put his hand on the plaintiff's leg, later kissed her until she pushed him away, and a few weeks later jumped out at her from behind some bushes and tried to grab her). The Seventh Circuit has said that "although sporadic behavior, if sufficiently abusive, may support a [hostile environment] claim, success often requires repetitive misconduct." *Chalmers v. Quaker Oats Co.*, 61 F.3d 1340, 1345 (7th Cir. 1995).

In view of this case law, and drawing (as the law requires) all reasonable inferences in favor of Eager, a reasonable person in Eager's position could conclude that her cause of action for sexual harassment had not accrued until after December 15, 1999. She presents allegations of sporadic resentment towards women doing the job in 1992-95, along with some vulgar comments about her nipple size; in 1993, some coworkers showed her some pornographic pictures and made a few vulgar and suggestive remarks. Then there is nothing until 1998, when there is the ambiguous gesture with the chair. Misconduct escalated in 1998, with more comments expressing resentment that she was doing a "man's job," comments about her breasts and other sexual vulgarities, and threats of violence when she reported the problems to management. However, since the Seventh Circuit has held in *Saxton* that sometimes even actual unwanted

-9-

physical contact (kissing and folding) is not actionable, a reasonable person might think that Eager did not have a sexual harassment claim that she could bring. Whether she did I need not decide here; the question is whether a reasonable person would have thought she did.

Eager, of course, did think she had such a claim by October 1999, when she filed her first EEOC charge, but the standard for a continuing violation is objective. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 446 (7th Cir. 1994) (citing *Martin v. Nannie & Newborns, Inc.*, 3 F.3d 1410, 1415 n.6 (10th Cir. 1993) ("[T]he continuing violation theory is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that h[er] rights have been violated."). What Eager actually thought is therefore irrelevant if a reasonable person could have thought otherwise, and I must draw the inferences in her favor, which here means finding, for the purposes of this motion, that a reasonable person would think that she was mistaken to think that her cause of action had accrued by October 1999, when she filed her first EEOC complaint.

To invoke the continuing violations theory, Eager also needs an allegation of actionable conduct within the limitations period, but the defendants do not argue that she lacks such allegations; they only argue that pre-limitations period conduct should be excluded. In any event, she does indeed present sufficient

allegations of misconduct within the limitations period: pornographic materials being displayed in the vehicle to which she was assigned, crude sexual taunts, and the like, combined with failure of management to restrain this conduct when she complained. Because I allow the earlier allegations of misconduct in on the continuing violations theory, Eager may sue for damages on all the sexual harassment alleged, not just on the post-limitations facts.

III.

I do, however, in part dismiss Eager's state law claims for lack of subject matter jurisdiction. In a federal question case, I have jurisdiction over state claims that share a "common nucleus of operative facts" with the federal claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *Myers v. County of Lake*, 30 F.3d 847, 850 (7th Cir. 1994). Eager's claims connected to her electrocution accident share no such common nucleus. There is no suggestion that ComEd compelled Eager to work excessively long hours, and so to incur serious injury, as a form of sexual discrimination, or that this unfortunate event is in any way related to Eager's Title VII claims except by way of temporal coincidence. It may have been inhumane for ComEd to insist that Eager work on the line while she was exhausted, but the federal discrimination laws do not prohibit even oppressive employment practices if they are not imposed because of the plaintiff's membership in a protected category. The occupational safety laws

are the federal statutes that deal with unsafe working conditions.

Here, therefore, unlike *Mobley v. Kelly Kean Nissan, Inc.*, 864 F. Supp. 726 (N.D. Ill. 1993), which Eager cites, the federal claims do not "involve the same set of facts that animate the state claims." *Id.* at 731. "A loose factual connection between the [state and federal] claims is generally sufficient" for supplemental jurisdiction. *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995). But unlike *Ammerman*, where the Seventh Circuit found that there was supplemental jurisdiction because, "without reference to the facts surrounding the assault, there could have been no sexual harassment claim against the employer," *id.*, here, Eager's Title VII claims would be unaffected if the electrocution claims were dismissed. With respect to those claims, therefore, it is not the case that the "factual allegations regarding incidents of physical assault and battery . . . are highly relevant to the determination of whether a hostile work environment existed." *Lynam v. Foot First Podiatry Centers, P.C.*, 919 F. Supp. 1141, 1148 (N.D. Ill. 1996). Counts III (assault and battery) and VIII (negligent infliction of emotional distress), insofar as they state claims relating to the electrocution, are dismissed for lack of subject matter jurisdiction.

However, Eager argues persuasively that count IV (assault) seeks relief for injuries directly related to the sexual harassment, including threats that Eager would be "pimp-slapped,"

and even of sexual assault (see, e.g., second amended complaint ¶ 41). Indeed, if the misconduct is sufficiently "severe," sexual harassment may implicate the common law torts of assault and (where there is physical contact) battery, as well as violate antidiscrimination laws, and thus render at least the immediate harassers liable for intentional torts, and under the appropriate circumstances, perhaps the employer as well. Count IV stands.

ComEd argues that Eager's count V, alleging intentional infliction of emotional distress, is preempted by the Illinois Worker's Compensation Act, 820 ILCS 305/1 et seq. ("IWCA"). Eager's response that, in other contexts, I have held that sexual harassment claims are not preempted by the Illinois Human Rights Act, is not to the point. The IWCA is a different statute. More promising is her invocation of *Meerbrey v. Marshall Field and Co.*, 564 N.E.2d 1222 (Ill. 1990), for the proposition that if a plaintiff can prove that "the injury (1) was not accidental, (2) did not arise from his or her employment, (3) was not received during the course of employment or (4) was noncompensable under the Act," the negligent infliction of emotional distress claim is not barred by the IWCA. *Id* at 1226 (citation omitted). *Meerbrey* "involved claims of intentional torts, not claims of negligent infliction of emotional distress. . . . [I] conclude[] that the four exceptions do not apply to claims of negligent infliction of emotional distress." *Porter v. IBM Corp.*, 21 F. Supp. 2d 829, 833

(N.D. Ill. 1998). However, an intentional infliction claim is clearly a claim of intentional tort, alleging conduct that is not accidental, and so falls under the first prong of *Meerbrey*. Eager's claim of intentional infliction of emotional distress is not preempted by the IWCA.

IV.

I DENY ComEd's motion to dismiss counts I and II (Title VII) and IV (assault). I GRANT the motion to dismiss with respect to count III (assault and battery), and I GRANT in part (with respect to the electrocution claims) to motion to dismiss count VIII (as Eager reckons it) but I DENY the motion with respect to the sexual harassment claims under those counts. The intentional infliction of emotional distress claim in count V is not preempted, and the motion to dismiss is DENIED.

ENTER ORDER:

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: February 19, 2002